UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAWN FALGOUT-LOEBIG                    CIVIL ACTION

VERSUS                                NO. 04-3480

ROSBOTTOM EMPLOYEES, L.L.C.           MAGISTRATE JUDGE
ET AL.                                JOSEPH C. WILKINSON, JR.

## ORDER AND OPINION ON MOTION

Plaintiff, Dawn Falgout-Loebig, sued her former employer, Rosbottom

Employees, L.L.C. ("Rosbottom"), and her former supervisor, Ashley Kisla, alleging that

she had been subjected to age discrimination and harassment in violation of federal and

Louisiana law.  She alleges that she was subjected to biased treatment based on her age

during the course of her employment by Rosbottom, in violation of 42 U.S.C. §§ 1981,

1983 and 1985; Title VII, 42 U.S.C. § 2000e et seq.; and Louisiana state law.  Although

Loebig does not specifically refer to either the Age Discrimination in Employment Act

("ADEA"),  29 U.S.C. § 623, or the Louisiana Employment Discrimination Law, La.

Rev. Stat. § 23: 301 et seq., in her complaint, she appears to state claims arising under

those statutes.  She also alleges state law causes of action for conversion, "malicious

actions and abuse of process."  Complaint, Record Doc. No. 1.

This matter was referred to the undersigned magistrate judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon the written consent of all parties.  Record Doc. No. 13.

Defendants filed a motion for summary judgment, supported by deposition transcripts and memoranda, e-mail messages and time records from Rosbottom.  Record Doc. No. 19.  Plaintiff filed a timely opposition memorandum, also supported by deposition transcripts, some of the same records proffered by defendants and some additional documents purportedly sent from Rosbottom to the Louisiana Department of Labor.  Record Doc. No. 21.  Defendants received leave to file a reply memorandum. Record Doc. Nos. 26, 27.

None of the documentary exhibits submitted by either party is verified as required by Fed. R. Civ. P. 56(e).  However, neither plaintiff in her opposition memorandum nor defendants in their reply memorandum object to any exhibit submitted by the other party. At least some of the documents appear to have been identified during the depositions of Loebig and Kisla.  See Defendant's Exh. A, deposition transcript of Dawn Falgout-Loebig, at pp. 276, 280, 281, 285, 291; Defendant's Exh. C, deposition transcript of Ashley Kisla, at pp. 61, 64. The court assumes that all of the exhibits could be verified, if the parties were ordered to do so, and will consider them as if they had been verified.

2

Having considered the complaint, the record, the submissions of the parties and the applicable law, and for the following reasons, **IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED**.

I.     THE UNDISPUTED MATERIAL FACTS

The following material facts are accepted as undisputed solely for purposes of defendants' motion for summary judgment.

Rosbottom is an employee leasing company that provides employees to operate truck stop/video poker casino facilities in Louisiana.  Defendant Kisla was Rosbottom's Director of Sales and Marketing and hired Loebig as a regional manager to supervise nine such facilities in southeast Louisiana.  Plaintiff was 44 years old[1] both when she was hired on May 26, 2003 and when she was fired on December 23, 2003.  Loebig reported to Kisla throughout her employment.

Among Loebig's duties were ensuring that the site managers of each facility followed Rosbottom's operating policies, including the proper reporting of employee work hours for payroll purposes.  Employees at each truck stop/video poker casino location could work in more than one aspect of the operation, such as in the gas

---

[1]Plaintiff and defendants are advised that, pursuant to a directive from the Judicial Conference of the United States and an order of the Chief Judge of this court, all parties must refrain from putting dates of birth and social security numbers in public records.

station/convenience store, the restaurant, the video poker casino and/or as a security guard. Rosbottom's policy, of which Loebig was aware, was that all hours worked by an employee in any aspect of operations must be cumulated to determine whether the employee had worked more than 40 hours in a work week and would be entitled to overtime pay, pursuant to federal wage and hour laws. Plaintiff was responsible for monitoring and controlling the amount of overtime worked by employees at the nine locations she supervised and for reporting any overtime to Kisla.

Loebig experienced no problems with Kisla before the events of mid-December 2003. She described Kisla as professional, cordial and responsive during the entire time period until her termination. Plaintiff identified no incidents or actions by Kisla before her termination that she considered to be discrimination or harassment based on her age. She considered her termination to be both discriminatory and harassing. Defendant's Exh. A, Loebig deposition at pp. 154-56, 182, 184, 185-91, 314-15.

Rosbottom employees were paid on a bi-weekly basis. After the payroll period ended on a Saturday, the site managers compiled all employee hours and sent them by facsimile or overnight mail to the Rosbottom payroll department by the following Monday or Tuesday.

On Monday, December 15, 2003, Loebig received a telephone call from Anna Cassell in Rosbottom's payroll department. Cassell told Loebig that a very large number

4

of overtime hours had been improperly reported as regular hours from the Southern Belle location in St. Francisville.  Cassell eventually determined that the location had 96 overtime hours, most of which had been originally reported as regular hours.

Loebig testified that Cassell did not tell her the exact number of overtime hours during this first call, but that she understood it was a very large amount.  She also testified that she did not know anything about the large number of overtime hours at the Southern Belle before Cassell's call.  Defendant's Exh. A, Loebig deposition at pp. 247-49, 275, 280, 291, 312.

Plaintiff's day planner notes for December 15th indicate that she learned that there were 96 hours of overtime at Southern Belle; she spoke to Lashondra "Nikki" Brown and Greg Camel, the site managers for the Southern Belle, concerning "hours entered incorrectly as regular time;" and she spoke with Cassell regarding the hours that should be paid as overtime.  Defendant's Exh. A, Loebig deposition at pp. 284-86.

After speaking with Cassell, Loebig telephoned Brown and Camel.  According to Loebig, Brown and Camel told her that they had followed a procedure established by a former manager of the location, who had not worked for Rosbottom and who had <u>not</u> cumulated the hours worked when an employee worked in different aspects of the operations.  Loebig told Brown and Camel that she would visit them shortly to correct the problem.  Defendant's Exh. A, Loebig deposition at pp. 252-58.

5

Plaintiff testified that she then contacted Kisla, or perhaps Kisla contacted her, and she told Kisla about the problem. Loebig said she told Kisla that the payroll department had already corrected the reported hours and that she would meet with Brown and Camel to correct the problem at their end. Defendant's Exh. A, Loebig deposition at pp. 254-55, 257-58.

Kisla testified that she first learned of the overtime issue from Cassell, not Loebig, on December 15th. She stated that, when she contacted Loebig on that date, Loebig denied knowing anything about any overtime hours at Southern Belle. Kisla found Loebig's statement unusual because she knew that Loebig had instructed all her managers to obtain written approval of any planned overtime and to notify Loebig immediately of any unplanned, emergency overtime hours. The next step would be for Loebig to notify Kisla of any such hours. Defendant's Exh. C, Kisla deposition at pp. 66-68.

After speaking to Loebig, Kisla telephoned Brown. According to Kisla, Brown said that she had asked Loebig how to handle the hours of employees who had worked in different aspects of the operations. Brown told Kisla that she had recorded all of the hours as regular hours, not overtime, because Loebig had told her to do so. According to Kisla, Brown said that Loebig had told her that, if Kisla said anything about the overtime hours, "then I will have to take that monkey." Defendant's Exh. C, Kisla

deposition at pp. 17, 62-63; see also Defendant's Exh. D, written statement of Nikki Brown.

Kisla also spoke to Camel by telephone on the same day.  Camel told her that he did not have any overtime in his department for the pay period, but he had talked to Loebig to clarify how to treat employee hours for overtime purposes in this situation and she had told him that anything over 40 hours was overtime.  He stated that, when he conveyed this information to Brown, she reacted with surprise and told him that that was not the same conversation she had just had with Loebig.  Defendant's Exh. C, Kisla deposition at pp. 13-16; see also Defendant's Exh. D, written statement of Greg Camel. Kisla asked both Brown and Camel to prepare written statements.  Defendant's Exh. C, Kisla deposition at pp. 12-13.

Brown submitted a written statement dated December 16, 2003, which stated:

On 12-15-03, I was doing my payroll and several employees had multiple time cards due to work in different ares [sic] of the store.  I usually report these times separatedlly [sic] and decided to ask if it was done correctly. I called Dawn Loebig for information regarding this situation.

I asked Dawn if the times for these employees working in different areas would be calculated together as a whole.  I also asked if it would be considered overtime if these times would go over regular time.  Dawn replied yes.

Dawn then asked me how much overtime did I have.  I told her approximately ninety hours.  She responded by saying, "Leave it the way

you have it.  If Ashly [sic] [Kisla] says anything, then I would have to take
that monkey."

Defendant's Exh. D, Brown statement.

Camel sent to Kisla a statement dated December 17, 2003, in which he said that

he had called Loebig on December 15th to ask about how time was to be paid after 40

hours, and

> she told me anything over 40 hrs. was overtime. . . .  I told (Nikki)
> Lashondra Brown about the situation.  She called Dawn and talked with
> her.  I did not here [sic] the conversation between the two.  Lashondra told
> me she said to do the business as usual and if any trouble comes from
> Ashley she'll handle it.

Defendant's Exh. E, Camel statement.

Kisla testified that these two statements accurately reiterated what Brown and

Camel had told her by telephone.  She stated that any instruction by Loebig to Brown to

leave the time sheets as they were and not to report overtime hours violated both

company policy and federal wage and hour laws.  Defendant's Exh. C, at pp. 62-63.

Loebig denied that she ever made these statements to Brown.  Defendant's Exh. A,

Loebig deposition at pp. 274, 293-94, 296-98.

Kisla also asked Loebig to submit a statement.  Loebig sent an e-mail message to

Kisla dated December 16, 2003, in which she stated that she had asked Brown and Camel

on December 15th "how much overtime they had."  She said "I was given the amount of

hours and I assumed that they were in the overtime column."  She acknowledged her mistake in making such an assumption and told Kisla to send her a disciplinary notice, if necessary, for not confirming that the paperwork from the Southern Belle had been filled out correctly.  Defendant's Exh. E, e-mail from Loebig to Kisla.

Loebig testified that she was not aware of the overtime issue at Southern Belle until Cassell notified her by telephone on December 15th.  Kisla testified that Loebig had denied knowing anything about any overtime hours during their initial conversation that day.  However, in her e-mail to Kisla on December 16th, Loebig stated that Brown and Camel had given her the amount of overtime hours the previous day.

Plaintiff testified that this statement meant that she was aware of some amount of overtime from her conversation with them, but she was not aware of the very large amount that Cassell had reported to her.  She said that the amount Brown and Camel had told her was not as much as 96 hours and that the amounts originally reported in the overtime column of the Southern Belle's payroll report for that pay period were not that much.  Defendant's Exh. A, Loebig deposition at pp. 275-78; see also Defendant's Exh. B, payroll records.

Plaintiff met with Camel and Brown on December 18, 2003 and counseled them about the proper procedure for reporting overtime.  She documented her conversations with them in writing.  Defendant's Exh. A, Loebig deposition at pp. 259-61, 281-84, 286,

9

312; Defendant's Exh. G, Employee/Manager Conversation Sheets dated December 18, 2003.

On December 19, 2003, Kisla sent an e-mail to Stacy Cherry[2] and Cassell, reporting the results of her investigation of the overtime pay reporting issue at the Southern Belle.  Defendant's Exh. C, Kisla deposition at p.9; Defendant's Exh. H, e-mail from Kisla to Cherry and Cassell.  Kisla reported that, when she had first contacted Loebig about the issue, Loebig had said that she had no idea they had so much overtime at that location, she would not tolerate it and she would write up the managers involved. Kisla stated that she then called Brown, who gave her a written statement that said Loebig had told her not to count any overtime hours and that Loebig would handle it if Kisla said anything.  Kisla further said in the e-mail that she had asked Brown to call Loebig, with Kisla listening on the line, and Loebig had admitted to Brown that she had said what was written in Brown's statement and that she would call Kisla.  Kisla stated that, within minutes, she received a telephone call from Loebig, explaining that there had been a "miss communication [sic]" between her and Brown, and that she thought that Brown knew to submit all overtime hours.  Kisla concluded her e-mail:  "However, at first when asked[,] Dawn denied any knowing of overtime to me."  Defendant's Exh. H.

---

[2]The parties have not explained to the court who Cherry is.

Kisla confirmed in her testimony the events she had related in the e-mail.  She testified that plaintiff's initial statement to her that she knew nothing about any overtime was "absolutely" inconsistent with her later e-mail, in which Loebig said she had been given the amount of hours by Brown and had assumed that they were in the overtime column.  Based on that inconsistency, Kisla found Brown's statements about what Loebig had told her more credible than Loebig's.  Kisla testified that she fired Loebig on December 23, 2003 because she believed that Loebig had instructed Brown not to report overtime hours, in violation of federal wage and hour laws, and not because of plaintiff's age.  Defendant's Exh. C, at pp. 9-11, 63-69.  Although Loebig denied the allegations and asked Kisla to investigate further before firing her, Kisla declined.  Defendant's Exh. A, Loebig deposition at pp. 294-97.

After firing plaintiff, Kisla took over "98 percent" of her duties.  Store managers Darren Savoie, Sherry Fontenot and Tammy Pitrie handled the remaining two percent of Loebig's duties.  This arrangement lasted more than a year, until Kisla hired Don Chauvin to handle the entire state, a job assignment that was broader than but included plaintiff's former duties.  Chauvin was in his mid- to late 40s.  Defendant's Exh. C, Kisla deposition at pp. 20-23.

Plaintiff applied for unemployment benefits from the Louisiana Department of Labor.  After her initial request was denied, she received a hearing and an award of

11

benefits. Although Rosbottom had contested plaintiff's initial request, Rosbottom failed to send anyone to the hearing.  Loebig's application for benefits was apparently granted by default.  Plaintiff's Exh. B, forms submitted by Rosbottom to Department of Labor; Defendant's Exh. A, Loebig deposition at pp. 306-07; Defendant's Exh. C, Kisla deposition at pp. 29-30.

Plaintiff never filed any charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") or the Louisiana Commission on Human Rights. Defendant's Exh. A, Loebig deposition at p.307.

II.   <u>ANALYSIS</u>

A.   <u>Standard of Review</u>

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)  The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but it is not required to negate elements of the nonmoving party's case. <u>Capitol Indem. Corp. v. United States</u>, No. 04-20966, 2006 WL 1609417, at *2 (5th Cir. June 13, 2006) (citing <u>Celotex Corp.</u>

v. Catrett, 477 U.S. 317, 323 (1986)); Edwards v. Your Credit, Inc., 148 F.3d 427, 431 (5th Cir. 1998) (citing Celotex, 477 U.S. at 323).

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of its claim. Id. (citing Celotex, 477 U.S. at 321-23). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord Capitol Indem. Corp., 2006 WL 1609417, at *2.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards, 148 F.3d at 432. "'We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.'" Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)) (emphasis in original). "Conclusory allegations

13

unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'"  <u>National Ass'n of Gov't Employees</u>, 40 F.3d at 713 (quoting <u>Anderson</u>, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in <u>any</u> case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."  <u>Little</u>, 37 F.3d at 1075 (quotation omitted) (emphasis in original).

    B.   <u>Plaintiff's Claims Under Sections 1981, 1983 and 1985 and for Conversion</u>

Loebig's complaint purports to allege civil rights claims under 42 U.S.C. §§ 1981, 1983 and 1985 and for conversion under state law.  However, in her opposition memorandum, Loebig does not reply to defendants' arguments that these claims should be dismissed.  Accordingly, this portion of defendants' motion for summary judgment is deemed to be unopposed, and it appears that defendants' arguments have merit.

The law is clear that Sections 1981 and 1985 apply only to claims of race discrimination, <u>Csoka v. United States</u>, 94 F.3d 647, 1996 WL 467654, at *3 n.3 (7th Cir. 1996) (unpubl.); <u>Payne v. Travenol Labs., Inc.</u>, 673 F.2d 798, 815 (5th Cir. 1982), and Loebig has not alleged any discrimination or harassment based on her race.

A claim under Section 1983 must allege a deprivation of constitutional rights by a state actor and does not apply to employment discrimination claims, like Loebig's, against a private employer.  American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999); Wong v. Stripling, 881 F.2d 200, 202 (5th Cir. 1989).

"Conversion is an act in derogation of the plaintiff's possessory rights or any wrongful exercise or assumption of authority over another's goods, depriving [her] of permanent or indefinite possession." Bernofsky v. Tulane Univ. Med. Sch., 962 F. Supp. 895, 906 (E.D. La. 1997) (Berrigan, J.) (citation omitted).  Loebig admitted in her deposition testimony that no one at Rosbottom appropriated her property.  Defendant's Exh. A, Loebig deposition, at pp. 316-17.

Accordingly, plaintiff's claims pursuant to 42 U.S.C. §§ 1981, 1983 and 1985 and her conversion claim are dismissed.

C.    Plaintiff's ADEA and Title VII Claims

Loebig asserts claims of age discrimination and harassment under the ADEA. Although her complaint did not mention the ADEA, the facts and jurisdictional allegations in her complaint support such claims, and her opposition memorandum confirms that her claims arise under the ADEA.  Her complaint also invokes Title VII,

although Title VII does not provide a cause of action for age discrimination.[3]  In her opposition memorandum, Loebig argues that she has a retaliation claim under Title VII, although she alleged no such cause of action in her complaint.

Loebig does not respond in her opposition memorandum to defendants' arguments that she cannot bring Title VII or ADEA claims against Kisla individually, as a matter of law.  Accordingly, this portion of defendants' summary judgment motion is deemed to be unopposed, and it appearing that defendants' arguments have merit, see Ackel v. National Commc'ns, Inc., 339 F.3d 376, 382 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities."); Medina v. Ramsey Steel Co., 238 F.3d 674, 686 (5th Cir. 2001) ("Likewise, the ADEA provides no basis for individual liability for supervisory employees.") (quotation omitted), plaintiff's claims against Kisla under Title VII and the ADEA are dismissed with prejudice.

Loebig admits that she never filed a discrimination charge with the EEOC.  A Title VII plaintiff in Louisiana must file her charge with the EEOC within 300 days of the alleged discriminatory or retaliatory conduct.  Janmeja v. Board of Supervisors, No. 03-30957, 2004 WL 902304, at *1 (5th Cir. Apr. 28, 2004) (unpubl.) (citing 42 U.S.C.

---

[3]Title VII makes it is unlawful for any employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1) (emphasis added).

§ 2000e-5(e)(1)); Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 351 (5th Cir. 2001).   Similarly, "a person seeking relief under the ADEA must first file an administrative charge with the EEOC." Julian v. City of Houston, 314 F.3d 721, 725 (5th Cir. 2002) (citing 29 U.S.C. § 626(d)).

Failure to file a charge with the EEOC within the 300-day limitations period requires dismissal of a civil complaint of discrimination as time-barred under the ADEA or Title VII, unless equitable tolling operates to save the claims.  National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (Title VII cases); Tyler v. Union Oil Co., 304 F.3d 379, 382, 391 (5th Cir. 2002) (citing 29 U.S.C. § 626(d)) (ADEA cases).

Loebig argues that her filing of a claim for unemployment benefits notified Rosbottom of her claim of age discrimination and of a "judicial procedure scheduled for plaintiff by [the] Louisiana Department of Labor."  Record Doc. No. 21, at p.9.  She also invokes the civilian legal doctrine of contra non valentem, which is a state law doctrine similar to equitable tolling.

The contra non valentem doctrine would apply to plaintiff's Section 1981 and 1983 claims because those statutes do not contain their own statutes of limitations and are governed by the most analogous state law limitations period, including its tolling rules. Felton v. Polles, 315 F.3d 470, 484 (5th Cir. 2002); Jackson v. Pala, Inc., 621 F. Supp. 1119, 1121 (M.D. La. 1985) (Polozola, J.) (citing Board of Regents v. Tomanio, 446 U.S.

17

478, 485 (1980)).  However, Loebig's Section 1981 and 1983 claims have already been dismissed on other grounds.

Contra non valentem does not apply to plaintiff's Title VII and ADEA causes of action because these federal statutes contain their own limitations provisions and do not import state law as a rule of decision.  However, contra non valentem is similar in many respects to the federal rule of equitable tolling.  Thus, the result is the same whether plaintiff argues contra non valentem or equitable tolling to excuse her failure to file an EEOC charge.

There are four circumstances in which contra non valentem may apply.

(1) Where there was some legal cause which prevented the court or its officers from taking cognizance of and acting on the plaintiff's actions; (2) Where there was some condition coupled with the contract or coupled with the proceedings which prevented the creditor from suing or acting; (3) Where the debtor has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) Where the cause of action was not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

Leach v. Alonso, 663 So. 2d 344, 348 (La. App. 3d Cir. 1995) (citing Corsey v. State Dep't of Corrections, 375 So. 2d 1319 (La. 1979)).  This doctrine

is only applied in cases where the "defendant has concealed the fact of the offense or has committed acts (including concealment, fraud, misrepresentation, or other 'ill practices') which tend to hinder, impede, or prevent the plaintiff from asserting his cause of action, as long as plaintiff's delay in bringing suit is not willful or the result of his own negligence."FN3.

18

FN3. Statutes of limitation are favored in the law, and mere ignorance of one's rights will not toll the statute of limitations under Louisiana law.

Jackson, 621 F. Supp. at 1121 & n.3 (quoting Nathan v. Carter, 372 So. 2d 560, 562 (La. 1979)) (additional citations omitted); accord Edmundson v. Amoco Prod. Co., 924 F.2d 79, 82-83 (5th Cir. 1991).  Plaintiff has the burden of establishing facts that support applicability of the doctrine.  Id. at 82.

Similarly, under federal law, "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting [her] rights."  Rashidi v. American President Lines, 96 F.3d 124, 128 (5th Cir. 1996).  Loebig bears the burden of showing that rare and exceptional circumstances beyond her control made it impossible for her to file her charge timely.  Bowers v. Potter, 113 Fed. Appx. 610, 2004 WL 2434892, at *3 (5th Cir. Nov. 1, 2004) (unpubl.) (Title VII cases) (citing Hood v. Sears Roebuck & Co., 168 F.3d 231, 232 (5th Cir. 1999)); Eavenson v. Amresco, Inc., 213 F.3d 639, 2000 WL 554955, at *7 n.19 (5th Cir. 2000) (unpubl.) (ADEA cases) (citing Blumberg v. HCA Mgmt. Co., Inc., 848 F.2d 642, 644 (5th Cir. 1988)).

"Equitable tolling, however, should apply only in rare and exceptional circumstances.  Neither a plaintiff's unfamiliarity with the legal process nor [her] lack of

representation during the applicable filing period merits equitable tolling." <u>Turner v.</u> <u>Johnson</u>, 177 F.3d 390, 391-92 (5th Cir. 1998) (quotation and citation omitted).

Loebig has not borne this burden. Filing a claim for unemployment benefits with the state Department of Labor in no way substitutes for or accomplishes the remedial purposes of filing a discrimination charge with the EEOC. The documents that Rosbottom submitted to the Louisiana Department of Labor bear no indication that discrimination was at issue in that administrative proceeding. Plaintiff's Exh. B. Loebig does not contend that Rosbottom prevented her from asserting her rights before the EEOC. She has neither asserted nor proffered evidence of any reason, much less an extraordinary reason, that prevented her from filing an EEOC charge.

Because more than 300 days have passed since the last act of alleged age discrimination, harassment or retaliation by Rosbottom, Loebig is time-barred from filing any charge with the EEOC. Filing such a charge is a prerequisite for bringing a claim under either the ADEA or Title VII. Accordingly, defendant's motion for summary judgment is granted and plaintiff's claims under the ADEA and Title VII are dismissed.

D.     <u>Plaintiff's Age Discrimination Claim Under State Law</u>

Loebig brings a claim of age discrimination and harassment under the Louisiana anti-discrimination law. La. Rev. Stat. § 23: 301 et seq. Defendants argue that her claim is barred by the statutory requirement that a

> plaintiff who believes he or she has been discriminated against, and who intends to pursue court action <u>shall give the person who has allegedly discriminated written notice of this fact at least thirty days before initiating court action</u>, shall detail the alleged discrimination, and both parties shall make a good faith effort to resolve the dispute prior to initiating court action.

La. Rev. Stat. § 23: 303(D) (emphasis added).    The Louisiana Employment Discrimination Law does not by its express terms provide any penalty for noncompliance with this section.

Plaintiff again argues that her filing of an unemployment benefits claim provided Rosbottom with sufficient notice to satisfy the Louisiana Employment Discrimination Law's pre-litigation notice requirements.  I find that this filing did <u>not</u> provide the mandatory notice required by Section 23:303(C).  The section provides that one "who <u>intends to pursue court action</u> shall give the person who has allegedly discriminated written notice of <u>this fact</u> at least thirty days before initiating court action [and] <u>shall detail the alleged discrimination</u>." <u>Id.</u> § 23:303(C) (emphasis added).  The filing of an unemployment claim provides no indication that plaintiff intends to pursue court action and gives no details about any discrimination she allegedly experienced.

Neither the Louisiana Supreme Court nor the federal Fifth Circuit has addressed the meaning of either Section 23:303(C) or its virtually identical counterpart in the

21

Louisiana Civil Rights for Handicapped Persons Act,[4] which also does not by its express terms provide any penalty for noncompliance.  However, decisions by various federal district courts in Louisiana and one Louisiana appellate court have interpreted these two notice provisions of Louisiana law.  These courts have consistently held that a claim under either statute must be dismissed if plaintiff failed to comply with the notice provision, unless plaintiff had filed a charge of discrimination with the EEOC within the appropriate time period, which effectively accomplished the same goals as the statutory notice under state law.  Lombardino v. Brentwood Health Mgmt. L.L.C., No. 05-1358, 2005 WL 2600439, at *2-3 (W.D. La. 2005) (Stagg, J.); Schildkraut v. Bally's Casino New Orleans, LLC, No. 04-366, 2004 WL 2348321, at *11 (E.D. La. Oct. 14, 2004) (Knowles, M.J.); Dunn v. Nextel So. Corp., No. 01-691-A, 2002 WL 1401673, at *1 (M.D. La. Jan. 8, 2002) (Parker, J.); Brown v. Menszer, No. 99-0790, 2000 WL 1228769, at *2 (E.D. La. Aug. 23, 2000) (Duval, J.); Malakoff v. Alton Ochsner Med. Fd., No. 99-3603, 2000 WL 805232, at *2 (E.D. La. June 20, 2000) (Mentz, J.); Simpson-Williams v. Andignac, 902 So. 2d 385, 387-88 (La. App. 4th Cir. 2005).

_____

[4]La. Rev. Stat. § 46:2256(B) provides:

Any person who believes he has been discriminated against and intends to pursue court action must give the person who has allegedly discriminated written notice of this fact at least 30 days before initiating court action, must detail the discrimination and both parties must make a good faith effort to resolve the dispute before court action.

Loebig failed to comply with the literal terms of Section 23:303(C) and failed to file a charge with the EEOC before filing this lawsuit, which might have substituted for the statutory notice requirement.  Furthermore, Loebig has provided no evidence that she made a good faith effort to resolve the issue before initiating suit.  Because she failed to satisfy the prerequisites of La. Rev. Stat. § 23:303(C), defendant's motion for summary judgment is granted and plaintiff's state law age discrimination claims are dismissed.

> E.   Plaintiff's Abuse of Process Claim

In her complaint, plaintiff alleges "malicious actions and abuse of process" under Louisiana law.  In her opposition memorandum, she argues that defendants' actions constituted an abuse of rights, which is a different cause of action under Louisiana law from abuse of process.  In either case, Loebig bears the burden of proof as to each essential element of these claims, but she has submitted no evidence in response to the motion for summary judgment sufficient to create a disputed issue of material fact that would prevent dismissal of these claims.  Celotex, 477 U.S. at 321-23.

> The tort of abuse of process, as recognized by Louisiana law, consists of two essential elements:  an ulterior purpose and a willful act in the use of process not proper in the regular conduct of proceedings. . . .  If the process complained of by the Plaintiff has been properly brought, the underlying motive for bringing the process is immaterial.

Junior Money Bags, Ltd. v. Segal, 798 F. Supp. 375, 380 (E.D. La. 1990) (McNamara, J.), aff'd, 970 F.2d 1 (5th Cir. 1990) (citing Stark v. Eunice Superette, Inc., 457 So. 2d

291 (La. App. 3d Cir. 1984); <u>Vasseur v. Eunice Superette, Inc.</u>, 386 So. 2d 692 (La. App. 3d Cir. 1980)).  Loebig has neither alleged nor proffered any evidence to show that Rosbottom willfully used any judicial process against her.  Thus, her abuse of process claim must fail.

"To recover under a theory of abuse of rights, Plaintiff must show that [she] has suffered unnecessarily some harsh consequence as a result of the Defendant's exercising a legal right without legitimate or serious interest."  <u>Id.</u> (citing <u>Morse v. J. Ray McDermott & Co.</u>, 344 So. 2d 1353 (La. 1977)).  The Louisiana Supreme Court set forth four tests for determining whether a legal right has been abused:  "(1) whether the right was exercised primarily or exclusively to harm another; (2) whether there was a serious or legitimate interest worthy of protection; (3) whether the right was exercised in violation of moral rules, good faith or elementary fairness; and (4) whether the right was exercised for purposes other than for which the right was granted."  <u>Id.</u> at 380-81 (citing <u>Illinois Cent. Gulf R.R. v. International Harvester Co.</u>, 368 So. 2d 1009 (La. 1979)).  At least one of these criteria must be met for the abuse of rights doctrine to apply.  <u>Ballaron v. Equitable Shipyards, Inc.</u>, 521 So. 2d 481, 483 (La. App. 4th Cir. 1988).

The only evidence in the record as to any of these tests is Rosbottom's uncontradicted, competent evidence that Kisla fired Loebig in the exercise of Rosbottom's serious, legitimate and nondiscriminatory interest in having its employees

follow company policy, uphold the federal wage and hour laws and not lie to their supervisor.  Plaintiff's mere subjective disbelief of Kisla's stated, documented reason for her decision is not competent evidence and is insufficient to defeat summary judgment. Hathcock v. Acme Truck Lines, Inc., 262 F.3d 522, 526-27 (5th Cir. 2001); Marshall ex rel. Marshall v. East Carroll Parish Hosp. Serv. Dist., 134 F.3d 319, 324 (5th Cir. 1998); Clark v. America's Favorite Chicken Co., 110 F.3d 295, 299 (5th Cir. 1997).  This factor does not support plaintiff's abuse of rights claim.

Plaintiff has provided the court with no evidence to satisfy any of the remaining three tests for abuse of rights.  Indeed, her argument in this regard refers only to a male plaintiff who was not hired by the defendant, which is not the case at bar.  Plaintiff's Opposition Memorandum, Record Doc. No. 21, at pp.7-8.  Because there are no genuine issues of disputed material fact concerning this claim, it must be dismissed.

CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that defendants' motion for summary judgment is GRANTED and that plaintiff's claims are DISMISSED WITH PREJUDICE, plaintiff to bear all costs of this proceeding.  Judgment will be entered accordingly.

New Orleans, Louisiana, this   10th   day of July, 2006.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE